UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

*******************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 03-30103(01)-CBK |
| Plaintiff, | * | |
| -vs- | * | REPORT AND RECOMMENDATIONS FOR DISPOSITION OF MOTION UNDER §2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE |
| SOUTHY THEPMONTRY, | * | |
| Defendant. | * | |

*******************************************************************************

The above-captioned 28 U.S.C. §2255 case was referred to this Court, pursuant to 28 U.S.C. §636(b)(1)(B), for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendations for disposition thereof.[1] Having carefully reviewed and considered all of the evidence and testimony presented together with the records on file and being fully advised in the premises, the Court does now make and propose the following findings, report and recommendations for disposition of the case.

I.

Defendant, Southy Thepmontry ("Thepmontry"), was convicted of conspiracy to distribute methamphetamine and sentenced to 200 months of imprisonment. Docket No. 233. He appealed his conviction and sentence, but the same were affirmed by the Eighth Circuit

---

[1] The referral was made by the Honorable Charles B. Kornmann, United States District Judge, presiding.

Court of Appeals. United States v. Thepmontry, 196 Fed. Appx. 449 (8th Cir. 2006). The appeals court later denied his petition for writ of mandamus. Docket No. 264.

Thepmontry then filed a timely Motion under §2255 to vacate, set aside or correct his sentence. Id. at 267. After conducting an initial consideration of the Motion, the District Court dismissed all of Thepmontry's claims, save one, referred the case to this Court and directed that Plaintiff, United States of America ("Government"), file an answer and brief. Id. at 271. This Court subsequently reviewed the Government's submissions, determined that an evidentiary hearing was warranted and appointed counsel for Thepmontry. Id. at 274.

On October 16, 2008, an evidentiary hearing was held at which two witnesses testified (trial counsel and Thepmontry) and 10 exhibits were received into evidence. Id. at 299. At the conclusion of the hearing, the Court allowed the parties to comment on the evidence by way of written argument, which Thepmontry has done. Id. at 300.

II.

The only claim left to be decided is one based on ineffective assistance of trial counsel. Id. at 271. As a §2255 movant, Thepmontry faces a heavy burden under the two-part Strickland test to establish that his counsel's assistance was ineffective. To prevail on his remaining claim, Thepmontry must show both (1) that counsel's performance was deficient, i.e., fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 688, 687-88, 694 (1984); United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. A court must "indulge a strong presumption" that counsel's conduct was

reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." Id. at 689-90. When reviewing counsel's performance, a court must avoid using the "distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." Id. at 689. "[I]t is all too easy for a court, examining counsel's defense after is proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the movant cannot prove prejudice, a court "need not address whether counsel's performance was deficient." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000); see also United States v. Flynn, 87 F.3d 996, 1000 (8th Cir. 1996).

Applying these precepts to the case at hand, leads to the conclusion that Thepmontry has failed to meet the rigid standards of Strickland and its progeny and therefore cannot prevail on, or obtain §2255 relief for, his ineffective assistance of counsel claim.

III.

In its Order dismissing all but one of Thepmontry's claims, the District Court determined that factual issues existed as to whether or not trial counsel rendered ineffective assistance of counsel in connection with Thepmontry's decision to go to trial, rather than plead guilty (with or without a plea agreement) to the drug conspiracy offense charged in the Superseding Indictment. Docket No. 271 at 3. Thepmontry claims that counsel should have

3

advised him to enter an open plea of guilty (that is, one without a plea agreement) or to enter into a plea agreement that did not require him to cooperate. Id. He contends that he would have been given a lesser sentence had he pled guilty, and not gone to trial, because he would have received a reduction for acceptance of responsibility[2] and avoided enhancements for his leadership role and for possession of a weapon. Id.

The record, however, indicates that Thepmontry was fearful of receiving a lengthy prison term and would not plead guilty without receiving assurances as to what his sentence would be. Evid. Hrg. Tr. 30, 40, 43-44. He wanted a specific sentence and was willing to accept a plea agreement that called for five years of incarceration. Id. at 14, 18, 30, 43-44. Because Thepmontry could not receive these assurances from the Government and did not know exactly what his sentence would be, he refused to sign a plea agreement. Id. at 18, 30, 32-33, 40, 43-44.

Nor would he plead guilty and allow the Government to prove, and the District Court to find, that he conspired to distribute methamphetamine at or in excess of 1.5 kilograms. Id. at 43. Moreover, he did not want to be described as a "conspirator" and believed that he was not responsible for the distribution of 1.5 kilograms or more of methamphetamine. Id. at 31, 43.

Beyond this, Thepmontry at times proclaimed his innocence. Id. at 30-31; Docket No. 273, Ex. 2 at 5-6. While admitting to certain acts, he denied being involved and/or a willing

---

[2]Thepmontry's prior assertion that his competency examination was a "sham and unreliable" and that as such he may not have been competent to stand trial, Docket No. 273, Ex. 1 at 7-8, is at odds with his contention now that he would have received an acceptance of responsibility sentence reduction had he pled guilty.

4

participant in the conspiracy and maintained that people were lying about him. Evid. Hrg. Tr. 14, 30-31.

And, despite trial counsel's best efforts, Thepmontry refused to accept the plea offered to him. Id. at 13, 30-32. Counsel advised Thepmontry, shortly before trial, that his chances of obtaining an acquittal were slim to non-existent and laid out what the consequences were and how counsel felt about the plea agreement. Id. at 12-13, 32-33. Even though counsel was "tough with him", Thepmontry would not plead guilty. Id. at 30-31.

Thepmontry's claim that he was guilty of the charge and would not have proceeded to trial but for trial counsel's advice is belied by and/or inconsistent with the record and in particular, Thepmontry's own prior statements. In his Petition for Writ of Mandamus and Other Relief, he alleged that "it was the Turkeys who were using and selling methamphetamine prior to meeting [Thepmontry] and not the other way around", that "the Turkeys furnished drugs to [him] not vice-versa", and that he was "a user of methamphetamine, and that the supplier was Phiou Vancam not [Thepmontry] who only picked up the drugs for personal use." Docket No. 273, Ex. 2 at 6. Similarly, in his §2255 Motion, Thepmontry alleged as follows:

> [I]f [trial counsel] had researched the procedures that govern federal criminal proceedings, [counsel] would have known that the real fight here was for a reduced sentencing range under the Guidelines. Proper research by [counsel] of the facts and the law would have led [counsel] to make the proper strategic decision to have [Thepmontry] pled (sic) guilty even if there was no plea agreement and argue the enhancement at the sentencing hearing.
>
> * * *
>
> [Counsel's] profession[al] knowledge and "judgment" caused by the limited investigation prejudiced [Thepmontry] by causing him to proceed to trial with no chance to win when an open guilty plea would have yielded a much lower sentence."

5

Docket No. 267, Ex. A at 12.

These statements reflect a position that Thepmontry was innocent of the charged offense, rather than a desire to plead guilty to it because he was guilty. "A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later §2255 claim that he would have pled guilty if only he had received better advice from his lawyer." Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003), cert. denied, 540 U.S. 1199 (2004); see also United States v. Stevens, 149 F.3d 747, 748 (8th Cir.), cert. denied, 525 U.S. 1009 (1998); Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).

This, coupled with the fact that Thepmontry has not alleged, much less proved, that counsel failed to advise him of the consequences of going to trial or inaccurately did so, soundly defeats Thepmontry's ineffective assistance claim and any relief sought therefrom.

IV.

Trial counsel, who was court appointed, discussed the Government's plea agreements with Thepmontry several times. Evid. Hrg. Tr. 9-12, 18, 28-30; Evid. Hrg. Ex. 1. Counsel, however, testified that he could not "specifically remember" talking to Thepmontry about an open plea. Evid. Hrg. Tr. 18. In counsel's view, an open plea and a plea entered pursuant to a plea agreement were "[p]retty much" the same in the context of Thepmontry's case. Id. at 14-15. The plea agreement made to Thepmontry, just days before trial, provided:

> 1. For recommendations concerning sentencing to be made by the Government, including a two, and potentially a three, level reduction in his offense level for acceptance of responsibility and the imposition of a sentence at the lower end of the relevant guideline range;

6

    2.      That he would not be subject to any further federal criminal prosecution in the District of South Dakota based on his involvement in the conspiracy alleged in the Superseding Indictment;

    3.      That he would cooperate and if his cooperation constituted substantial assistance, the Government would move for a reduction in his sentence pursuant to Federal Rule of Criminal Procedure 35; and

    4.      For him to waive his right to appeal any and all motions, defenses, probable cause determinations and objections which he had asserted or could assert in his case except the "reasonableness" of his sentence in the event the District Court sentenced him above the established guideline range.

Evid. Hrg. Ex. E. While his prospects of receiving a Rule 35 sentencing reduction were not very good and he would have had to give up most of his appeal rights, see Evid. Hrg. 16-17, Thepmontry nonetheless still fared better, in terms of the criminal exposure, under the plea agreement than pleading guilty without one, see id. at 27-28. As counsel aptly noted, had Thepmontry pled guilty to the conspiracy offense without the benefit of a plea agreement, he would have been at the "mercy" of both the Government and the District Court[3]. Id. at 27. Specifically, given his willingness only to admit to a small aspect of the case (i.e. minimize his drug involvement), Thepmontry might well have been denied acceptance of responsibility altogether and received a different, and more harsh, sentence. Id. at 28.

      Even if trial counsel did not advise Thepmontry that he could plead guilty to the methamphetamine conspiracy charge without a plea agreement, Thepmontry has not shown, to a reasonable degree of probability, that his potential sentence would have been different, and more advantageous, with an open plea than under the plea agreement offered to him on

---

[3]Although Thepmontry was somewhat at the Government's "mercy" under the plea agreement as far as sentencing was concerned, the agreement provided him with a framework for receiving reductions in his sentence and protection against future prosecution, benefits he would not have had with an open plea.

the eve of trial. He has thus failed to establish that he was prejudiced by counsel's alleged failure to inform him of his option to enter an open, unrestricted, plea. This being the case, Thepmontry cannot succeed on his ineffective assistance of counsel claim.

V.

Based on his testimony and post-hearing brief, it appears that the gravamen of Thepmontry's claim is that it matters not whether trial counsel conveyed the substance of plea offers to him and advised him of the consequences of going to trial because Thepmontry did not have an interpreter present when any of this took place and thus, did not understand what counsel told him. Id. at 38-40. Yet as the District Court previously observed, Thepmontry had a "more than adequate understanding of the [English] language and the legal system to communicate with his lawyer and assert his claims. His claims to the contrary are frivolous." Docket No. 271 at 4. Thepmontry's own spoken and written words plainly demonstrate that he was able to communicate in English, see e.g. id., and the testimony of those he associated with, in his drug dealings, corroborate this, see T. Tr. 87, 90, 95, 97-98, 107, 132-33, 141, 152-54, 156-57, 188. So do other parts of the record. See e.g. Evid. Hrg. Tr. 47; Docket Nos. 19, 21, 162[4], 194, 216, 221, 222, 237, 239, 241, 268, 271 at 4, 273, Exs. 4, 5.

Additionally, the Court did not find Thepmontry's testimony, at the evidentiary hearing, to be very credible as to his knowledge and understanding of English. For example, he acknowledged wanting a specific sentence of five years, the same as one of his associates,

---

[4]Docket Nos. 19, 21 and 162 are minutes of pre-trial court hearings. Thepmontry did not have an interpreter for any of these hearings. In fact, the minutes of one of the hearings, in which he appeared with another attorney he had retained, reflect that he "does not require the services of an interpreter." Id. at 19.

Kim Burger, Evid. Hrg. Tr. 30, but maintained that he had difficulty communicating with counsel because he "didn't understand English at all", id. at 38. He also remembered a reference in the plea papers to 10 ounces (referring to the low end quantity mentioned in the proposed factual basis statement that was included with these papers, see Evid. Hrg. Ex. E), and said he would sign the plea agreement, but wanted to know "how much" he would get before doing so. Evid. Hrg. Tr. 44. Counsel, who the Court found to be a credible witness, testified that Thepmontry wanted some assurance as to what his sentence would be, if he pled guilty, and was willing to agree to a five-year custody term. Evid. Hrg. Tr. 14, 30. If counsel in any way sensed that Thepmontry did not understand what counsel was saying, counsel stayed with whatever the topic was until the two of them understood each other[5]. Evid. Hrg. Tr. 8, 35. Counsel made every effort to make sure that Thepmontry understood counsel and did not ever worry about whether Thepmontry had understood what counsel had said, or vice versa. Evid. Hrg. Tr. 32. Thepmontry's steadfast claim that he did not understand the nature and substance of the plea offers made to him and/or the consequences of going to trial because of a language barrier, is dubious at best. Tran v. Lockhart, 849 F.2d 1064, 1068 (8th Cir. 1988), cert. denied, 489 U.S. 1091 (1989); see also United States v. Nostratis, 321 F.3d 1206, 1211-12 (9th Cir. 2003) (use of English in court proceedings undermines defendant's argument that he did not understand English well enough to comprehend plea agreement); Lopez v. McGrath, No. C 04-1621 JSW (PR), 2007 WL 2127317 at *10 (N.D. Cal. July 24, 2007) (defendant, who wrote five letters in English to the court and whose counsel did not

---

[5]It is evident that the psychologist, who conducted Thepmontry's competency evaluation, did the same thing. See Docket No. 194.

sense any lack of understanding during discussions with him, was not entitled to federal habeas relief). Accordingly, his claim cannot provide him with a basis for §2255 relief.

VI.

A movant is required to obtain a certificate of appealability (COA) from a district or circuit judge before appealing from the final order entered in a §2255 proceeding. 28 U.S.C. §2253(c)(1)(B). A district court is authorized to determine a COA if the movant has made a substantial showing of the denial of a constitutional right. §2253(c)(2); United States v. Lambros, 404 F.3d 1034, 1036 (8th Cir.), cert. denied, 545 U.S. 1135 (2005); Garrett v. United States, 211 F.3d 1075, 1076 (8th Cir.) (per curiam), cert. denied, 531 U.S. 908 (2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Garrett, 211 F.3d at 1077; Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

The Court is convinced that Thepmontry cannot satisfy this standard and make the requisite "substantial showing" with respect to his ineffective assistance of counsel claim. The claim does not even come close to running afoul of the Constitution and for this reason, a COA should be denied.

VII.

Based on the foregoing findings of fact and legal discussion and pursuant to §636(b) and Rule 8(b) of the §2255 Rules, it is hereby

RECOMMENDED that Thepmontry's ineffective assistance of counsel claim for relief, the only claim not decided in the District Court's January 14, 2008 Order, Docket No. 271, be denied in all respects. It is further

10

RECOMMENDED that Thepmontry's Motion under §2255 to vacate, set aside or correct sentence by a person in federal custody, Docket No. 267, be dismissed on the merits and with prejudice. It is further

RECOMMENDED that a COA, if one is sought by Thepmontry, be denied as to all issues and claims raised in his §2255 Motion.

Dated this 3rd day of November, 2008, at Pierre, South Dakota.

BY THE COURT:

_____
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
                    Deputy
(SEAL)

NOTICE

Failure to file written objections to the foregoing Report and Recommendations within 10 days from the date of service shall bar an aggrieved party from attacking the Report and Recommendations before the United States District Judge assigned to review the case. See §636(b) and 8(b) of the §2255 Rules.